UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SHAWNA M. NELSON,

Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

Defendant.

No. 2:16-cv-02125 CKD

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.[1]

BACKGROUND

Plaintiff, born July 19, 1967, applied on May 1, 2013 for SSI, alleging disability beginning April 20, 2011. Administrative Transcript ("AT") 12, 19, 153. Plaintiff alleged she was unable to work due to diabetes, hypertension, obesity, and other conditions. AT 62. In a

---

[1] The parties have consented to magistrate judge jurisdiction. See ECF Nos. 6 and 8.

1

decision dated May 11, 2015, the ALJ determined that plaintiff was not disabled.[2] AT 12-20. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.
>
> 2. The claimant has not engaged in substantial gainful activity since April 20, 2011, the application date.
>
> 3. The claimant has the following severe impairments: ovarian cyst; hypertension, diabetes mellitus with diabetic ketoacidosis and renal manifestations; diabetic neuropathy; hyperlipidemia; fatty liver; morbid obesity; esophagitis; lumbago; myofascial pain syndrome; hand/wrist tenosynovitis; right trigger finger; and right carpal tunnel syndrome.

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work. In particular, the claimant is able to lift/carry 10 pounds occasionally and five pounds frequently. She can stand/walk two hours in an eight-hour workday; and sit, six hours in an eight-hour workday. She would require a sit/stand option at 30-minute intervals. She is able to climb stairs, balance and stoop to knee level occasionally. She can never kneel, crouch, crawl or climb ladders/ropes/scaffolds. She should avoid all exposure to machinery and heights. She is able to handle/finger occasionally and may be absent or off task 10% of the time.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on July 16, 1967 and was 43 years old, which is defined as a younger individual age 18-44, on the date the application was filed.

8. The claimant has at least a high-school education and is able to communicate in English.

9. Transferability of job skills is not an issue in this case because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 20, 2011, through the date of this decision.

AT 14-20.

## ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ's step five determination was erroneous due to the unexplained conflict between the vocational expert's testimony and the Dictionary of Occupational Titles; (2) the ALJ erred in rejecting a medical opinion from plaintiff's treating physician at Sacramento County Primary Care Clinic; and (3) the ALJ erred by failing to address evidence of side effects caused by plaintiff's prescription medication.

## LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## ANALYSIS

### A. Conflict between DOT and VE's testimony

At step five, the ALJ determined that there were available jobs in the national economy that plaintiff could perform. AT 19-20. Specifically, the ALJ found that plaintiff could perform the requirements of representative occupations such as:

- surveillance system monitor (DOT 379.367-010, SVP 2, sedentary exertion), for which 1,000 positions exist in California and 16,000 positions exist nationally;

- call out operator (DOT 237.367-014, SVP 2, sedentary exertion), for which 1,200 positions exist in California and 18,000 exist nationally; and
- election clerk (DOT 205.367-030, SVP 2, sedentary exertion), for which 3,000 positions exist in California and 30,000 positions exist nationally.

AT 20. The ALJ noted that, "[p]ursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." AT 20.

Plaintiff argues there was an "apparent conflict" between the vocational expert's (VE's) testimony about available jobs for someone with plaintiff's limitations and the Dictionary of Occupational Titles. The United States Department of Labor, Employment & Training Administration's Dictionary of Occupational Titles ("DOT") is routinely relied on by the SSA "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990). The DOT classifies jobs by their exertional and skill requirements. The DOT is a primary source of reliable job information for the Commissioner. 20 C.F.R. § 404.1566(d)(1); see Social Security Ruling 00-4p (providing that when there is an apparent unresolved conflict between the vocational expert's testimony and the DOT, the ALJ must clarify the discrepancy).

Plaintiff argues that "there is a conflict between the DOT, which describes sedentary work as requiring the ability to sit for two hours at a time, and Plaintiff's RFC, which limits her to sitting for a maximum of 30 minutes at a time. Importantly, neither the ALJ nor the VE addressed this conflict at any point." (ECF No. 20 at 9.) As noted above, plaintiff's RFC included the limitation that she "would require a sit/stand option at 30-minute intervals."

In opposition, defendant points out that the ALJ specifically asked the VE to identify and explain any conflict between his testimony and the information in the DOT, and at the end of his testimony, the VE affirmed that it was consistent with the information in the DOT. AT 52, 56. Second, defendant asserts that because the DOT is silent on a sit/stand option for sedentary work, there was no conflict or deviation between the VE's testimony about available jobs and the DOT.

////

5

Plaintiff cites Social Security Ruling (SSR) 96-9p, which discusses "sitting" in the context of determining the capacity to perform sedentary work:

> In order to perform the <u>full range</u> of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals. . . . An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. . . . It may be especially useful to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

(Emphasis added.)

Here, the ALJ explicitly found that plaintiff did <u>not</u> have the RFC to "perform the full range of sedentary work," but that her ability "to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations." AT 19-20. "To determine the extent to which these limitations erode the unskilled sedentary occupational base," the ALJ properly consulted a VE to determine whether jobs existed for someone with plaintiff's RFC, including the sit/stand requirement. AT 20. See <u>Wentz v. Comm'r of Soc. Sec.</u>, 401 Fed. Appx. 189, 191 (Oct. 26, 2010) (where the ALJ asks the VE to identify any conflicts between her testimony and the DOT, and the VE identifies none, the ALJ met his obligations to investigate potential conflicts with the DOT, and his reliance on VE testimony was proper).

In <u>McDaniel v. Colvin</u>, 2017 WL 1399629, \*\*4-5 (C.D. Cal. April 18, 2017), the court addressed the same question as in the instant claim: "whether the vocational expert's testimony that a hypothetical claimant could perform certain jobs even though he needed a sit/stand option ... 'conflicts' with the DOT, which is silent on the subject." The <u>McDaniel</u> court noted that "[t]here is no controlling Ninth Circuit authority on point and the courts are divided." <u>Id.</u> at \*4 (collecting cases). "This Court agrees with the decisions (including the recent unpublished decision from the Ninth Circuit) finding that there can be no conflict between the vocational expert's testimony and the DOT where, as here, the DOT is silent on the subject in question." <u>Id.</u>, citing, e.g., <u>Dewey v. Colvin</u>, 650 Fed. Appx. 512 (9th Cir. May 26, 2016) (no conflict between VE's testimony and DOT where latter is "silent on whether the jobs in question allow for a

6

sit/stand option" and ALJ "confirmed that VE's testimony did not deviate from the DOT").

Similarly here, the undersigned concludes that plaintiff has failed to show a "conflict" between the DOT and the vocational expert's testimony. Cf. Massachi v. Astrue, 486 F.3d 1149, 1154 n. 19 (9th Cir. 2007) (procedural error harmless where no conflict). On this record, the ALJ's reliance on the vocational expert's testimony was proper.

B. Primary Care Center Work Report

Plaintiff next claims that the ALJ erred by discounting a medical report from the Sacramento County Primary Care Clinic, where plaintiff was treated in 2012 and 2013. The county records include a one-page work evaluation by the "Medical Review Team" for the purpose of determining plaintiff's employability status for General Assistance. The December 2014 checkbox form indicates that plaintiff is unable to sit, stand, or walk more than 4.6 hours in a day; can lift up to five pounds; is unable to squat or climb; and cannot perform repeated grasping, pulling, twisting, or fine manipulation motions due to neuropathy. AT 1141. The form is not signed, and plaintiff concedes that "it is not clear who submitted" it. (ECF No. 20 at 11.)

The ALJ wrote that this record "documents a general assistance physician evaluation. However, this opinion is given no weight, as it is not clear if this evaluation was completed by an acceptable medical source or based on the medical evidence of record." AT 18. In contrast, the ALJ gave significant weight to medical reports by state agency physicians. AT 18. In determining RFC, the ALJ found that "the weight of the evidence shows that while the claimant may experience some level of pain and discomfort, ... the medical evidence showed that it is so well controlled and that the claimant could nonetheless perform a wide range of sedentary exertional work." AT 18.

Plaintiff argues that the ALJ impermissibly rejected the opinion of a treating source and should have developed the record to clear up whether an "acceptable medical source" authored the report. But the ALJ did not err in discounting a one-page checkbox report of unknown authorship. See Molina v. Astrue, 674 F.3d 1104, 1111-12 (9th Cir. 2012) ("We have held that the ALJ may permissibly reject check-off reports that do not contain any explanation of their basis of their conclusions") (quotation omitted).

Plaintiff contends that the ALJ should have developed the record to clarify who authored the report. Evidence raising an issue requiring the ALJ to investigate further depends on the case. Generally, there must be some objective evidence suggesting a condition that could have a material impact on the disability decision. See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); Wainwright v. Secretary of Health and Human Services, 939 F.2d 680, 682 (9th Cir. 1991). "Ambiguous evidence . . . triggers the ALJ's duty to 'conduct an appropriate inquiry.'" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen, 80 F.3d at 1288.)

However, the rejection of a single medical opinion in an otherwise adequate record does not automatically trigger the duty to develop the record. See McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011) ("Rejection of the treating physician's opinion on ability to perform any remunerative work does not by itself trigger a duty to contact the physician for more information."). Here, the overall record, including opinions by state agency physicians stating that plaintiff could perform sedentary work, was not inadequate to evaluate plaintiff's RFC. Moreover, the ALJ left the record open after the hearing for any additional medical records that plaintiff wished to provide. AT 60. The undersigned concludes that the ALJ did not err in discounting the Primary Care Center Work Report for the reasons stated in the ALJ's decision.

C. Side Effects

In her third claim, plaintiff asserts that the ALJ erred by failing to consider evidence that plaintiff had additional functional limitations caused by the side effects of her prescribed medications, including opioid pain medication.

At the hearing, plaintiff testified that she took pain medication every twelve hours and that it made her sleepy. AT 36, 39. She also testified that the muscle relaxant she took made her sleepy, the insulin caused constant hunger, and the blood pressure medications caused dry mouth and dizziness. AT 39. She attributed the fact that she slept about four hours a day to her medications. AT 52. Plaintiff cites evidence that she was dependent on hydrocodone (Norco), an opioid-based pain medication, including 2013 clinical notes that plaintiff was "trying tapering the dose of norco" and which advised follow-up with her doctor "for further management of norco withdrawal." AT 715-718. Plaintiff contends that the ALJ "did not consider any functional

limitations caused by plaintiff's medications." (ECF No. 20 at 13.)

However, as defendant points out, the ALJ noted in his RFC analysis that "[p]ain medications and muscle relaxers make her sleepy and dizzy." AT 17. The ALJ also found that plaintiff must avoid all exposure to machinery and heights (AT 16), citing "additional restrictions limiting the claimant from driving or using dangerous machinery due to possible inattentiveness due to pain medication." AT 18. The RFC also included the limitation that plaintiff "may be absent or off task 10% of the time," plausibly related to the noted side effects of medication. Finally, the ALJ found that "the claimant's allegations are partially supported due to her elevated body weight and use of prescription medication to control symptoms"; however, he found the allegations "not entirely credible," and plaintiff does not challenge the ALJ's credibility finding.

Based on the foregoing, the undersigned concludes that the ALJ sufficiently considered functional limitations caused by medication side effects.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 20) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 24) is granted; and

3. Judgment is entered for the Commissioner.

Dated:  December 20, 2017

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/nelson2125.ssi.ckd

9